UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITAL SOFTWARE SERVICES, INC., | No. 2:09-cv-02763-MCE-DAD |
| Plaintiff, | |
| v. | AMENDED MEMORANDUM AND ORDER[1] |
| ENTERTAINMENT PROGRAMS, INC., a California Corporation; JOSEPH A. PERSHES, individually and as owner of ENTERTAINMENT PROGRAMS, INC.; KOCH ENTERTAINMENT DISTRIBUTION; LLC, a Delaware limited liability company; INGRAM ENTERTAINMENT, INC., a Tennessee corporation; CD VIDEO MANUFACTURING, INC. A California corporations; and L&M OPTICAL DISC WEST, LLC, a California limited liability company, | |
| Defendants. | |

----oo0oo----

---

[1] This Amended Memorandum and Order is substantively identical to the Court's original February 25, 2010 Order, except to the extent it clarifies that the Motion to Dismiss brought on behalf of Sky Media LLC dba Historic Sales (Docket No. 44) is also denied as moot along with the Motion to Dismiss filed by Ingram Entertainment, Inc.

1

Defendants Entertainment Programs, Inc., Joseph A. Pershes, and Koch Entertainment Distribution, LLC (collectively "Defendants") petition this Court to compel arbitration and move to stay proceedings pending arbitration.[2] For the reasons set forth below, Defendants' Petition will be granted and the instant action will be stayed.

## BACKGROUND[3]

In the early 1990s, Teleteam, Inc. produced a series of ten aviation-themed videos about World War II era warplanes titled "Roaring Glory." Teleteam entered into an exclusive worldwide marketing and distribution agreement with Program Power Entertainment, Inc. ("Program Power") in which Program Power obtained exclusive control over the rights of the videos. In 2002, Program Power entered into a distribution agreement ("Distribution Agreement" or "Agreement") with Defendant Joseph Pershes' company, Defendant Entertainment Programs, Inc. ("EPI"). Under the Agreement, EPI became the exclusive distributors in the United States and Canada of the Roaring Glory videos. However, the contract did not grant EPI the right to copy or replicate the videos and Program Power retained the right to sell the videos.
///

---

[2] Because oral argument will not be of material assistance, the Court orders this matter was deemed suitable for decision without oral argument. Local Rule 230(g).

[3] The factual assertions in this section are based on the allegations in Plaintiff's First Amended Complaint unless otherwise specified.

2

1       In late 2003, Program Power assigned the copyrights of the
2  Roaring Glory videos to Plaintiff Digital Software Services, Inc.
3  ("DSS" or "Plaintiff").  Pursuant to that assignment, Plaintiff
4  owns all rights and controls the distribution of the videos
5  through either self-marketing or by way of tightly controlled
6  distribution agreements, like the agreement with Defendant EPI.
7       Plaintiff alleges that Pershes and EPI failed to pay the
8  required royalties for sale of the videos.  As a result, on
9  January 7, 2004, Program Power terminated the distribution
10 agreement with EPI.
11      Plaintiff further alleges that Pershes did not stop
12 distributing the videos after the Agreement was terminated.
13 Plaintiff believes that Pershes contracted with Defendant Koch
14 Entertainment, Inc. ("Koch"), Defendant CD Video Manufacturing,
15 Inc. ("CD Video"), and L & M Optical Disc West ("L&M West") to
16 replicate and sell counterfeit Roaring Glory videos.
17      On October 5, 2009, Plaintiff brought suit against
18 Defendants alleging copyright infringement, trafficking in
19 counterfeit labels, trademark infringement, civil RICO, and
20 conspiracy to violate RICO.  Defendants seek to enforce the
21 Distribution Agreement's arbitration clause which broadly
22 provides that "[a]ny and all disputes arising in connection with
23 this agreement shall be resolved by binding arbitration, pursuant
24 to the California Arbitration Law."  Distribution Agreement,
25 Ex. B to the Decl. Of Joseph A. Pershes, Section 14.01.
26 ///
27 ///
28 ///

**STANDARD**

When a contract contains an arbitration clause, there is a presumption that the matter will be submitted to arbitration. AT&T Techs. Inc. v. Comm's. Workers of Am., 475 U.S. 643, 650 (1986). Under the Federal Arbitration Act (FAA), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"An order to arbitrate...should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Any doubts should be resolved in favor of arbitration. Id. at 583. In making this determination, a court looks only at whether the parties agreed to arbitrate the claim, not to the merits of the claim itself. AT&T Techs. Inc., 475 U.S. at 649-50.

In determining the existence of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). Specifically, "although the FAA governs the interpretation of arbitration clauses, California law governs whether an arbitration agreement has been formed in the first instance, and whether an arbitration agreement exists is an issue for judicial determination."
///

4

Baker v. Osborne Development Corp., 159 Cal. App. 4th 884, 893 (Ct. App. 2008).  California law also reflects a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.  Moncharsh v. Heily & Blase, 3 Cal. 4th 1, 9 (1992).

"On petition of a party to an arbitration agreement...the court shall order the [parties] to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."  Cal. Civ. Proc. Code § 1281.2.  The right to arbitration depends on the existence of an agreement to arbitrate, and a party cannot be forced to arbitrate in the absence of such an agreement.  Fredrick v. First Union Secs., Inc., 100 Cal. App. 4th 694, 697 (Ct. App. 2002).  "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."  Lee v. S. Cal. Univ. For Prof'l Studies, 148 Cal. App. 4th 782, 786 (Ct. App. 2007).  "Very limited circumstances exist under which a nonparty to an arbitration agreement can be bound by someone else's consent..."  Id.

Because § 1281.2 requires an agreement to arbitrate as a prerequisite to granting the petition, the petitioner bears the burden of proving the existence of a valid agreement by a preponderance of the evidence.  Rosenthal v. Great W. Fin. Secs. Corp., 14 Cal. 4th 394, 413 (Cal. 1996).

///

///

5

If the party opposing raises a defense to enforcement, that party bears the burden of producing evidence of the defense and proving any necessary facts by a preponderance of the evidence. Id.

**ANALYSIS**

**A.　The Claims in Plaintiff's Complaint Arise in Connection With the Agreements.**

While both the FAA and California law express a strong public policy in favor of enforcing arbitration, that policy is not triggered unless an enforceable agreement is established, Baker v. Osborne Development Corp., 159 Cal. App. 4th 884, 892 (Ct. App. 2008), since the right to arbitrate depends upon contract. Romo v. Y-3 Holdings, Inc., 87 Cal. App. 4th 1153, 1158 (Ct. App. 2001). When presented with a petition to compel arbitration, then, this Court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. Id.

Plaintiff argues that this dispute is not amenable to arbitration because the claims do not arise in connection with the distribution or security agreement. Specifically, Plaintiff states that "the distribution agreement does not give EPI the right to do anything it has admitted doing." Pl.'s Opp. to Defs.' Pet. to Compel Arb. & Mot. to Stay Proc. 8:11. Plaintiff further maintains that "the security agreement does not give EPI the right to steal the Roaring Glory videos or compel arbitration." Id. at 11:4.

///
///

6

Plaintiff does not dispute that it is subject to the agreements entered into by Program Power as Program Power's successor in interest, even though Plaintiff did not itself enter into the agreements.

"When the parties to an arbitrable controversy have agreed in writing to arbitrate it and one has refused, the court, under Section 1281.2, must ordinarily grant a petition to compel arbitration." Wagner Const. Co. v. Pacific Mechanical Corp., 41 Cal. 4th 19, 26 (Cal. 2007).  As stated supra, a "heavy presumption weighs in favor of arbitrability; and order directing arbitration should be granted unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." O'Malley v. Wilshire Oil Co., 59 Cal. 2d 482, 491 (Cal. 1963) (internal citation omitted). Moreover, when parties include a broad arbitration provision, "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract" should be sent to arbitration. RN Solution, Inc. v. Catholic Healthcare West, 165 Cal. App. 4th 1511, 1522 (Ct. App. 2008).  "[W]hen the...agreement contains a broad arbitration clause, the question[s] of whether [and how] a particular act or failure to act effectively serves to terminate the agreement is to be resolved by the arbitrator." Northern California Newspaper Guild Local 52 v. Sacramento Union, 856 F.2d 1381, 183 (9th Cir. 1988).

///

///

7

1    Under this standard, the dispute between Plaintiff and
2 Defendants is arbitrable.  The parties' primary dispute stems
3 from Defendants' distribution of the Roaring Glory videos both
4 under the Agreement and once Defendants allegedly lost their
5 right to distribute.  Plaintiff alleges that Defendant breached
6 the Distribution Agreement and subsequently continued to make and
7 sell the videos even after their right to distribute was
8 terminated.  The determination of these claims falls within the
9 scope of the broad arbitration agreement to which both parties
10 consented.
11    With respect to the Distribution Agreement, Plaintiff
12 asserts that Program Power only agreed to arbitrate claims
13 "arising from the Distribution Agreement..., [and] never agreed
14 to arbitrate claims arising from EPI's intentional, criminal acts
15 or counterfeiting and piracy arising after termination of the
16 Distribution Agreement."  Pl.'s Opp. to Defs.' Pet. to Compel
17 Arb. & Mot. to Stay Proc. 10:22-25.  While Plaintiff invites the
18 Court to analyze the material issues involved in this case in
19 determining whether arbitration is appropriate, such an analysis
20 is in fact inappropriate.  "An order to arbitrate such
21 controversy may not be refused on the ground that petitioner's
22 contentions lack substantive merit."  Cal. Civ. Code § 1281.2.
23 "In deciding whether the parties have agreed to submit a
24 particular grievance to arbitration, a court is not to rule on
25 the potential merits of the underlying claim."  AT&T Techs., 475
26 U.S. at 649.
27 ///
28 ///

8

Therefore, this Court will not decide whether Defendants have the right to distribute videos after the contract terminated or whether the videos were stolen. These disputes arise from the Distribution Agreement and, as such, should be referred to arbitration.

Plaintiff also asserts that the Security Agreement could not, by its terms, have been breached until October 1, 2005. Since EPI allegedly began copying and selling videos in 2004, Plaintiff argues that the Security Agreement is not applicable. The Distribution Agreement, however, incorporates the Security Agreement by reference. "An agreement need not expressly provide for arbitration, but may do so in a secondary document which is incorporated by reference." Baker, 159 Cal. App. 4th at 895. The Security Agreement was made "in accordance with the provisions of the certain USA and Canada Distribution Agreement between Borrower and Lender dated September 30, 2002." Security and Financing Agreement, Ex. A to Pershes Decl., ¶ 1. Therefore, although the Security Agreement itself does not have an arbitration clause, it refers to the Distribution Agreement and under that Agreement, the parties consented to arbitration.

Under either the Distribution Agreement or the Security Agreement, then, arbitration of dispute between Plaintiff and EPI is indicated.

///
///
///
///
///

9

**B. Granting the Petition to Compel Arbitration Will Aid the Pending Litigation Against All Defendants and Will Not Result in Conflicting Rulings.**

Plaintiff also alleges that this matter should not be ordered to arbitration because at least five of the Defendants did not sign the agreement containing the arbitration clause. Plaintiff argues that "granting the motion and compelling arbitration would add the potential for conflicting rulings even as to EPI's liability, not just as compared to the other defendants." Pl.'s Opp. to Defs.' Pet. to Compel Arb. & Mot. to Stay Proc. 8:4-6. According to Plaintiff "[t]he general right to contractual arbitration...may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon." Pilimai v. Farmers Ins. Exchange Co., 39 Cal. 4th 133, 141 (Cal. 2006) (quoting Mercury Ins. Group v. Super. Ct., 19 Cal. 4th 332, 347-48 (Cal. 1960)).

Under California law, however, if the Court determines that a party to the arbitration is also a part to the litigation in a pending action the court is authorized to: 1) refuse to enforce the arbitration agreement; 2) order intervention or joinder; 3) order arbitration among the parties who have agreed to arbitration and stay the pending court action; or 4) stay arbitration pending the outcome of the court action. Cal. Code. Civ. Proc. § 1281.2(c). This section "is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration."

///

1  Mount Diablo Medical Center v. Health Net of California, Inc.,
2  101 Cal. App. 4th 711, 726 (Ct. App. 2002)).  Instead, as the
3  court explains in Cronus Investments, Inc. v. Concierge Servs,
4  35 Cal. 4th 376, 2005),

> "it is part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires... The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances - in order to avoid potential inconsistency in outcome as well as duplication of effort - does not contravene the letter or the spirit of the FAA."

Id. at 393 (quoting Mount Diablo Medical Center, supra, 101 Cal. App. 4th at 726).

Here, enforcing the arbitration agreement and staying the court proceeding will not result in any inconsistency.  In fact, arbitration may clarify and streamline this case.  Although five Defendants are not parties to the arbitration agreement, sending this case to arbitration may clarify whether the other Defendants are even liable.  Further, none of the other Defendants have opposed the Defendants' Petition to Compel Arbitration and one has expressly filed a statement of non-opposition with respect to the entire matter being stayed pending arbitration.  See Moving Defs.' Reply at 9:18-19; see also Def. Ingram Entertainment's Resp. to Defs' Pet. to Compel Arb. & Mot. to Stay Proc.  In addition, all Defendants agree that if arbitration is mandated by the Court, Moving Defendants' stay request should likewise be granted.  Id. at 9:20-21.

///
///
///

1  **C.   The Petition to Compel Arbitration is Not Time Barred.**

3    Plaintiff further asserts that EPI "could have brought a claim in arbitration...[but] EPI did not bring such a claim, and now, six years later, any such claim would be time barred." Pl.'s Opp. to Defs.' Pet. to Compel Arb. & Mot. to Stay Proc. 9:23-26.

8    "[A] court may not deny a petition to compel arbitration on the ground that the statute of limitations has run on the claims the parties have agreed to arbitrate." <u>Wagner</u>, 41 Cal. 4th at 26.  Although, "[d]elay in demanding or seeking to compel arbitration...can justify denying a motion to compel,... the rules that enforce the requirements of timely demands and petitions have nothing to do with the statue of limitation that create affirmative defenses to the claims the parties have agreed to arbitrate." <u>Id</u>. at 29.  Here, nothing in the record indicates that Defendants' delay in seeking arbitration justifies denial of their petition to compel.  Indeed, Defendants' decision to seek arbitration once court proceedings had been instituted against them appears reasonable.  Further, the Distribution Agreement's broad arbitration clause, which expressly extends to "[a]ny and all disputes arising in connection with this agreement" demonstrates that both procedural questions of timing and substantive issues on the merits should be resolved through arbitration.

///
///
///

See id. at 26 ("the assertion that the statute of limitations has run is an affirmative defense that falls naturally within the plain language of the parties' broad agreement to submit to arbitration 'any dispute aris[ing] out of' their contract"). Even in the face of less than clear language, doubts concerning the scope of arbitrable issues should still be resolved in favor of arbitration. Id.  Therefore, although Defendants may have been able to compel arbitration when Program Power terminated the contract, Defendants' petition to compel presently before the Court is not time barred as it falls within the broad provision mandating arbitration.

**CONCLUSION**

   For the reasons set forth above, Defendants' Petition to Compel Arbitration (Docket No. 32) is GRANTED.  Given that order to arbitrate, Defendants' concurrently filed Motion to Stay Proceedings Pending Arbitration (Docket No. 32) is also GRANTED. Finally, Defendant Ingram Entertainment's Motion to Dismiss (Docket No. 27), as well as the Motion to Dismiss brought on behalf of Sky Media, LLC dba Historic Sales (Docket No. 44) are DENIED as moot given the Court's decision to stay this action in its entirety pending arbitration between Plaintiff and EPI.

   IT IS SO ORDERED.

Dated: February 26, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE